NOT DESIGNATED FOR PUBLICATION

No. 114,580

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL ANTHONY ROBINSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed January 5, 2018. Affirmed in part and vacated in part.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*James Crux*, legal intern, *Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., PIERRON, J., and BURGESS, S.J.


PER CURIAM: Michael Anthony Robinson was charged with and found guilty of driving under the influence of alcohol (DUI), refusing to submit to a preliminary breath test, refusing to submit to alcohol or drug testing, and transporting an alcoholic beverage in an open container. During the officers' investigation, Robinson failed every field sobriety test that he took. Robinson refused to take a breath test. Robinson was charged under K.S.A. 2013 Supp. 8-1025 with refusal to take a breath test. Prior to trial, Robinson moved to have the charge for refusal to take a breath test dismissed on the basis that the statute was unconstitutional. The district court denied his motion. Robinson now appeals

1

his conviction of DUI asserting that there was insufficient evidence to find him guilty beyond a reasonable doubt, and further appeals the district court's decision to deny his motion to dismiss the charge for refusal to take a breath test.

FACTUAL AND PROCEDURAL BACKGROUND

At 12:29 a.m. on July 22, 2013, Officer Ryan Giles and Officer Jason Gross were on patrol, driving a fully marked police SUV with a light bar on top. They observed a vehicle that was driving in the far right lane swerve and almost hit the curb before quickly correcting itself. It was later discovered that Robinson was the driver of the vehicle. The officers testified that this type of action at this time of day was consistent with a person that was driving impaired, so the officers changed lanes in order to be behind the vehicle and started following it.

Shortly after the officers were behind Robinson, he quickly turned on his turning signal and moved over one lane to the left lane. The officers reported that Robinson did not signal, but the video evidence obtained from the dash cam showed Robinson did turn on his signal but that he failed to do so at least 100 feet before he changed lanes. The officers continued to drive in the right-hand lane through the next intersection. At the intersection, Robinson almost came to a complete stop at a green light and then quickly proceeded down the road.

Shortly after passing through the intersection, the officers changed lanes and again were behind Robinson. As soon as the officers were behind the vehicle, Robinson again quickly turned on his signal and changed back to the right lane without giving the proper warning distance. When he changed to the right lane, Robinson again almost came to a complete stop in the middle of the road before quickly proceeding. The officers again switched lanes to be behind the vehicle. As soon as the officers were in his lane, Robinson turned on his turning signal and quickly went all the way through the left lane

2

into the left-hand turning lane where he stopped for the red light. The officers followed Robinson through the intersection and turned on their emergency lights to conduct a traffic stop. Robinson pulled his vehicle into a nearby parking lot and stopped his vehicle.

When Robinson stopped his vehicle, Officer Gross approached the driver side to engage Robinson while Officer Giles approached the passenger side for support. When Officer Gross approached the vehicle and began speaking with Robinson, he could smell alcohol. When Officer Giles approached the vehicle he could see an open bottle of alcohol in the back seat of the vehicle and a brown bag on the front passenger-side floorboard with a closed bottle of alcohol poking out of the top. Officer Gross told Robinson he pulled him over because of his failure to signal properly during lane changes, and Robinson responded that he was driving this way because he did not know who the police were and he thought they were someone trying to follow him. Officer Gross reported that Robinson was slurring his words and fumbled around while trying to get his identification. Officer Giles then alerted Officer Gross to the open container of alcohol in the backseat of Robinson's vehicle. Officer Gross then asked Robison to step out of his vehicle. Robinson slightly stumbled getting out of the vehicle and used the door to balance himself. Officer Gross then asked Robinson to submit to a field sobriety test.

First Officer Gross asked Robinson to perform a walk-and-turn test. Robinson objected to taking the test stating that he would not be able to perform the test because he has a stigmatism in both eyes that prevents him from performing the heel-to-toe maneuver. Robinson eventually performed the test, but Officer Gross noted that he failed six of the eight portions of the test.

Officer Gross then asked Robinson to perform a one-leg stand test. Robinson objected to taking the test stating that he would not be able to perform the test because of his shoes and he had a problem with his foot. Robinson eventually started to perform the

3

test but put his foot down almost immediately. Officer Gross scored the test as a failure to attempt the test.

While Officer Gross was performing these tests, Officer Giles was conducting a preliminary search of the vehicle. During this search, Officer Giles found out that the bottle located in the brown bag was empty and that an additional bottle of alcohol was tucked underneath the driver's seat. The officer also reported that when he smelled the contents of the bottle located in the back seat, it smelled like the bottle contained vodka.

Officer Gross then asked Robinson to perform a preliminary breath test. Officer Gross read Robinson his rights as they pertain to the breath test including that (1) Robinson did not have the right to consult an attorney on whether or not to take the breath test, (2) failure to take the breath test is a traffic infraction that Robinson would be cited for, and (3) further testing may be required depending on the results of the breath test. Robinson attempted to take the test but failed to perform the instructions. Both Officer Gross and Officer Giles opined that Robinson was intentionally trying to cheat the test by allowing air to escape from the sides of his mouth while he was blowing into the machine. Robinson stated that he was unable to complete the test because he had asthma.

Because Robinson had offered an excuse for being unable to perform the physical tests, Officer Giles then asked Robinson to perform an alphabet test. Officer Giles asked Robinson to recite the alphabet starting with the letter D and stopping at the letter R. Robinson was unable to correctly recite the alphabet.

After Officer Gross had observed Robinson's driving, his body movements, smelled alcohol on his person, and had observed him fail every sobriety test they gave him, Officer Gross took Robinson into custody and transported him to the police station. Both officers opined that Robinson was too intoxicated to drive at that time. Once they

arrived at the station, Officer Gross gave Robinson his Implied Consent Advisories both orally and in writing using the DC-70 form. Officer Gross then asked Robinson to blow in the large breath test machine in the station to determine his blood alcohol concentration. Robinson refused to take the test.

Prior to trial, Robinson filed a motion to suppress any and all oral, written, or other nonverbal communications, confessions, statements, admissions, or tests alleged to have been completed by him. In support of his argument, Robinson argued that he was detained and that the officers asked him incriminating questions without reading him his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The district court denied his motion.

Additionally, Robinson filed a pretrial motion to dismiss the charge for refusal of breath test on the basis that K.S.A. 8-1025 was unconstitutional, Robinson claimed K.S.A. 8-1025 was unconstitutional because (1) it criminalized his exercise of his right to refuse a search, and (2) it violated his right to counsel at a critical stage. The district court denied his motion, reasoning that it believed the statute was constitutional as written and as applied to this case. At trial, Robinson through counsel again objected to the constitutionality of K.S.A. 8-1025, and the district court again denied his objection.

The jury found Robinson guilty on all counts. Robinson filed a motion for a new trial claiming the refusal of breath test charge as it exists and as applied to his case was unconstitutional and that the presentation of the evidence of his prior DUI convictions prejudiced the jury. The district court denied Robinson's motion for a new trial stating that it believed the statute was constitutional and that the prejudicial impact on the jury was mitigated by Robinson stipulating to the prior convictions. The district court then sentenced Robinson to a term of 12 months' prison and a fine of $2,500 for the DUI, a fine of $200 for transporting an open alcohol container, a term of 12 months' prison and a $2,500 fine for refusal to submit to a breath test, and a $105 fine for refusal to submit to a

preliminary breath test. The prison terms for DUI and refusal to submit to a breath test were to run consecutively.

Robinson timely appealed his conviction for DUI and his conviction for failing to submit to a breath-alcohol test.

ANALYSIS

*Was there sufficient evidence for a rational fact-finder to find Robinson guilty beyond a reasonable doubt of DUI?*

Robinson appeals his jury conviction for DUI. Robinson asserts that there was insufficient evidence for a rational fact-finder to find beyond a reasonable doubt that he was incapable of safely operating a vehicle.

"'When the sufficiency of evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016).

"'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. '[Citation omitted.]"*State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

A verdict may be supported by circumstantial evidence, if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other

reasonable conclusion. A conviction of even the gravest offense can be based entirely on circumstantial evidence. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

Under K.S.A. 2016 Supp. 8-1567(a)(3), a finding of guilty for DUI requires the State to prove beyond a reasonable doubt that the defendant was "operating or attempting to operate any vehicle within this state while: (3) under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." Robinson has only challenged the ability to safely drive a vehicle element.

In *State v. Shadden*, 290 Kan. 803, 834, 235 P.3d 436 (2010), the court held that the circumstantial evidence of intoxication was sufficient to find the defendant guilty under K.S.A. 8-1567(a)(3). The court noted "a driver's performance on tests designed to test motor and cognitive skills for signs of impairment is probative and material to the question of whether the driver was operating a vehicle while [DUI]." 290 Kan. at 818.

In *Shadden*, the defendant refused to take a breath test but failed all of his field sobriety tests. The defendant failed to correctly recite the alphabet and failed the walk-and-turn test. The officer did not do a one-leg stand test, but he did do additional testing in the way of a counting test and a finger-to-nose test. Prior to performing the tests, the officer observed that the defendant was swaying when he walked and slurring his words. Further, the officer noted that the defendant smelled of alcohol. Prior to pulling the defendant over, the officer observed the defendant run through a red light and almost caused a traffic accident. When the officer pulled the defendant over, the defendant stopped in the middle of the road rather than pull over to the curb.

When the facts are reviewed in the light most favorable to the State, we see a situation where Robinson was erratically changing lanes, unable to maintain speed, unable to complete any of the physical roadside sobriety tests, unable to recite the alphabet, stumbled as he walked, slurred his words, had one-and-a-half empty alcohol

7

containers in the vehicle, and smelled of alcohol. Further, Robinson was unable to detect a full light bar on the top of the police SUV, thereby suggesting that he was unaware of his surroundings while he was driving. The inference that can be drawn from these activities is that Robinson was intoxicated to the point that he was unable to follow simple instructions and that his motor skills were impaired to a level that he was a danger to others on the road, and he, therefore, was not able to safely drive his vehicle.

Robinson claims there are other possible explanations for his actions, such as feeling that he was being followed so he began changing lanes and speeding to allude whomever was on his tail or having a bad toe so he was unable to complete the roadside tests. However, in viewing the evidence in the light most favorable to the State, the inference that Robinson was DUI was more than reasonable. There was sufficient evidence for a reasonable fact-finder to find Robinson guilty of DUI and transporting an open alcohol container beyond a reasonable doubt.

*Did the district court err when it denied Robinson's motion to dismiss the charge for refusal to submit to a breath test?*

Robinson appeals his conviction for refusal to take a breath test. Robinson asserts that K.S.A. 8-1025 violates his right to be free from unreasonable searches and seizures, his privilege against self-incrimination, and his due process rights.

Determining the constitutionality of a statute is a question of law that is subject to de novo review. *State v. Ryce*, 306 Kan. 682, 691, 396 P.3d 711 (2017). However, "[t]he doctrine of stare decisis 'instructs that points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised. '[Citation omitted.]" *State v. Spencer Gifts*, 304 Kan. 755, 766, 374 P.3d 680 (2016).

8

In *Ryce*, our Supreme Court reviewed the constitutionality of K.S.A. 2016 Supp. 8-1025. The court held that K.S.A. 2016 Supp. 8-1025 is facially unconstitutional because it criminally punishes the party for withdrawing consent. 306 Kan. at 699-700. The court found that K.S.A. 2016 Supp. 8-1025 is solely premised on consent. 306 Kan. at 697. In coming to this conclusion, the court reasoned that K.S.A. 2016 Supp. 8-1025 is only applicable to those tests *deemed consented to* under K.S.A. 2016 Supp. 8-1001(a), so the plain meaning of the statute would be that only those tests that are completed as a result of being *deemed consented to* could invoke the statute. 306 Kan. at 696-97. The court noted that its decision was solely based on the precise language of K.S.A. 2016 Supp. 8-1025 and not on the premise that any breath test conducted without a warrant is unconstitutional. 306 Kan. at 700.

In *Ryce*, the court expressly addressed *Birchfield v. North Dakota*, 579 U.S. __, 136 S. Ct. 2160, 195 L. Ed. 560 (2016). The court noted that *Birchfield* did not control on the issue of validity of K.S.A. 2016 Supp. 8-1025, because its decision is based on an interpretation of the statute and not on the constitutional issue of whether warrantless breath tests were constitutional. *Ryce*, 306 Kan. at 700.

In *Ryce*, our Supreme Court held the charge against the defendant for failure to submit to a test under K.S.A. Supp. 2016 8-1025 must be dismissed in light of the statute being unconstitutional. 306 Kan. at 700.

In *State v. Nece*, 306 Kan. 679, 680-81, 396 P.3d 709 (2017), our Supreme Court cited its holding in *Ryce* as binding precedent and applied the analysis to a determination of whether consent is voluntary when given after a suspect has been read his rights under K.S.A. 2016 Supp. 8-1025. There, the court stated that because K.S.A. 2016 Supp. 8-1025 was unconstitutional, the consent obtained as result of the threat of criminal prosecution was involuntary. *Nece*, 306 Kan. at 681.

9

Here, Robinson was charged under K.S.A. 2013 Supp. 8-1025 for refusing to submit to a breath test. Therefore, *Ryce* is controlling and the charge is unconstitutional. The convictions for refusing to submit to the preliminary and evidentiary breath tests are vacated.

The State attempted to assert that the good-faith exception should apply to this situation. However, the good-faith exception is not applicable in this situation. The good-faith exception is a rule of evidence that provides an exception to the exclusionary rule. *State v. Carlton*, 297 Kan. 642, 646, 304 P.3d 323 (2013). The exclusionary rule is a judicially created remedy that excludes evidence gained as a result of an illegal search and seizure from being used in the prosecution's case-in-chief. *State v. Pettay*, 299 Kan. 763, 768-69, 326 P.3d 1039 (2014).

Here, Robinson is not requesting the exclusion of evidence, but is instead asking for the charge to be dismissed based on the statute under which the charge arises being unconstitutional. Therefore, the good-faith exception does not apply.

Affirmed in part and vacated in part.